**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| DARKOWL, LLC, | § § § | Case No.: |
| Plaintiff, | § § § | |
| v. | § § | JURY TRIAL DEMANDED |
| ARKOWL LLC and ARKOWL CORPORATION | § § § § | |
| Defendants. | § § § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff DarkOwl, LLC ("DarkOwl" or "Plaintiff"), by and through their undersigned counsel, allege as follows for their Complaint against Defendants Arkowl LLC and Arkowl Corporation (collectively, "Arkowl" or "Defendants").

### I.   NATURE OF THE ACTION

1. This is an action for Declaratory Judgment for non-infringement and for an order of validity regarding U.S. Reg. Nos. 5525738 and 5793807, arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"), the Colorado Consumer Protection Act, Colorado Code §§ 6-1-105, *et seq.*, and Colorado common law.

2. Since 2017, DarkOwl has provided darknet intelligence and become a world-leading provider of cybersecurity consulting and services, darknet searching, monitoring, and investigations, and data security throughout the United States under its DARKOWL family of

trademarks, which includes DARKOWL, DARKOWL CYBERSECURITY, and DARKOWL (the "DARKOWL Marks"). Through its significant investment, DarkOwl has earned substantial goodwill and consumer recognition in the DARKOWL Marks for use in connection with darknet intelligence, data security, and cybersecurity services, and dark web searching, investigations, and monitoring consulting and services.

3. On April 2, 2021, years after DarkOwl's first use and federal registration of certain of its of DARKOWL Marks, Defendant Arkowl Corporation sent DarkOwl a demand letter alleging common law trademark rights in the ARKOWL marks and demanding DarkOwl cease all use of the DARKOWL Marks and surrender DarkOwl's federal registrations. Despite DarkOwl's good faith efforts to amicably resolve the dispute, on July 27, 2021, Arkowl sent another letter renewing its demand that DarkOwl cease and desist all use of the DARKOWL Marks as well as surrender its federal registrations.

4. DarkOwl seeks a declaration of non-infringement and a declaration of validity in its federal registrations.

## II.     PARTIES

5. DarkOwl, LLC is a Colorado limited liability company with its principal place of business at 216 16th Street, Suite 700, Denver, Colorado 80202.

6. Upon information and belief, Arkowl Corporation is Minnesota corporation with its principal place of business at 6585 County Road 50, Carver, Minnesota 55315.

7. Upon information and belief, Arkowl LLC is a Minnesota limited liability company affiliated with Arkowl Corporation and with its principal place of business at 6585 County Road 50, Carver, Minnesota 55315.

### III.   JURISDICTION AND VENUE

8. This is an action for Declaratory Judgment under Title 28 of the United States Code. This action also arises under the Lanham Act, Title 15 of the United States Code, the Colorado Consumer Protection Act, Colorado Code §§ 6-1-105, *et seq.*, and Colorado common law. Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

9. The Court also has subject matter jurisdiction over DarkOwl's claim requesting a Declaratory Judgment as to the validity of its United States trademark registrations pursuant to 15 U.S.C. § 1119, because the DARKOWL Marks' registrability is directly related to whether the DARKOWL Marks infringe Arkowl's alleged trademark rights.

10. The Court has personal jurisdiction over Arkowl because, on information and belief, Arkowl conducts business with customers in the State of Colorado and targets Colorado consumers under the ARKOWL mark.  Moreover, Arkowl has represented to DarkOwl that since at least as early as March 24, 2017, it has established common law rights in the ARKOWL mark in the State of Colorado, meaning that Arkowl has continuously conducted business with customers in the State of Colorado and targeted Colorado consumers sufficient to establish it has adopted, made use in commerce, and is currently using the ARKOWL mark in commerce in the State of Colorado.  Further, based on these claimed Colorado-based operations, Arkowl has alleged that DarkOwl committed trademark infringement in the State of Colorado, demanded that DarkOwl cease and desist its use of the DARKOWL Marks in the State of Colorado, and sent multiple communications to DarkOwl in the State of Colorado claiming DarkOwl has infringed and is infringing Arkowl's federal and common law trademark rights and Arkowl's purported

rights and remedies, thereby establishing sufficient minimum contacts with the State of Colorado to reasonably be haled into this Court, purposefully availing itself to the jurisdiction of this Court.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), (b), and (d) because, upon information and belief, Arkowl conducts business in and has sufficient contacts with this District to subject it to personal jurisdiction here. In addition, Arkowl represented to DarkOwl that it has established common law rights in the ARKOWL mark in the State of Colorado, meaning that Arkowl continuously conducts business with customers in the State of Colorado and targets Colorado consumers. Further, based on these claimed Colorado-based operations, Arkowl has alleged that DarkOwl committed trademark infringement in the State of Colorado, demanded that DarkOwl cease and desist its use of the DARKOWL Marks in the State of Colorado, and sent multiple communications to DarkOwl in the State of Colorado claiming trademark infringement. DarkOwl therefore has a reasonable apprehension of being sued in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## IV.   FACTUAL ALLEGATIONS

### A.   DarkOwl, Its Business, and Its DARKOWL Marks

12. DarkOwl, LLC was formed September 17, 2015, in the State of Colorado in order to provide darknet intelligence services, including cybersecurity consulting and services, searching, monitoring, and investigations of the dark web, data and darknet analytics, computer software services for cybersecurity, and advisory mitigation services when data has been compromised on the darknet. DarkOwl also provides the world's largest index of darknet content and the tools to efficiently search leaked and compromised data. As part of its overall marketing

and branding strategy, DarkOwl chose the DARKOWL Marks to promote its darknet intelligence, darknet index, and cybersecurity software and services.

13. Since at least as early as 2017, DarkOwl began using the DARKOWL word mark in commerce throughout the United States in connection with its darknet intelligence, darknet index, and cybersecurity software and services.

14. Since at least as early as August 2017, DarkOwl has used the DARKOWL CYBERSECURITY mark in commerce throughout the United States in connection with its darknet intelligence, darknet index, and cybersecurity software and services.

15. Since at least as early as September 2018, DarkOwl has used the DARKOWL mark in commerce throughout the United States in connection with its darknet intelligence, darknet index, and cybersecurity software and services.

16. In recognition of its trademark rights, DarkOwl owns the following U.S. trademark registrations ("DARKOWL Registrations") in connection with the listed services ("DARKOWL Services"):

| Mark | App./Reg. No./Date | Goods and Services | First Use Dates |
|---|---|---|---|
| DARKOWL CYBERSECURITY | 87384235 Mar. 24, 2017  5525738 Jul. 24, 2018 | Class 42: Providing a database featuring information about internet security and computer security from the deep web and the darknet; computer security consultancy regarding data and information collected and obtained from the deep web and the darknet; software as a service (SaaS) services featuring software for retrieving from, adding to, and editing a database featuring information and data obtained from the deep web and the darknet; computer software consulting services in the field of cybersecurity | First Use: Aug. 2017  First Use in Commerce: Aug. 2017 |

| | | | |
|---|---|---|---|
| | | utilizing deepweb and darknet information; electronic monitoring of information and data obtained from the deep web and the darknet for the purpose of internet and computer security by detecting compromised data; computer information security consulting services in the field of maintaining the security and integrity of computer information and data using information and data obtained from the deep web and the darknet; providing computer and internet security analysis of information obtained from the deep web and the darknet; providing cybersecurity threat analysis for protecting data using information obtained from the deep web and the darknet; cybersecurity services, namely, monitoring of computer systems for data security purposes utilizing deep web and darknet information | |
| DARKOWL | 88216005 Dec.4, 2018<br><br>5793807 Jul. 2, 2019 | Class 42: Providing a database featuring information about internet security and computer security from the deep web and the darknet; computer security consultancy regarding data and information collected and obtained from the deep web and the darknet; software as a service (SaaS) services featuring software for retrieving from, adding to, and editing a database featuring information and data obtained from the deep web and the darknet; computer software consulting services in the field of cybersecurity utilizing deepweb and darknet information; electronic monitoring of information and data obtained from the deep web and the darknet for the purpose of internet and computer security by detecting compromised data; computer information security consulting services in the field of maintaining the security and integrity of computer information and data using information and data obtained from the deep web and the darknet; providing computer and internet security analysis of information obtained from the deep web and the darknet; providing cybersecurity threat analysis for protecting data using information obtained from the deep web | First Use: Sep. 2018<br><br>First Use in Commerce: Sep. 2018 |

| | | and the darknet; cybersecurity services, namely, monitoring of computer systems for data security purposes utilizing deep web and darknet information | |

17. On March 24, 2017, DarkOwl filed U.S. App. Serial No. 87384235 for the DARKOWL CYBERSECURITY mark. The application was reviewed by the U.S. Trademark Office. The Trademark Office did not issue any refusals and did not find a likelihood of confusion with any prior registered marks. The application was published for third party opposition in the *Official Gazette* on August 22, 2017. No oppositions were filed against the application by any third parties, including Defendants. The application subsequently registered. A true and correct copy of U.S. Registration No. 5525738 is attached in **Exhibit A**.

18. On December 4, 2018, DarkOwl filed U.S. App. Serial No. 88216005 for the DARKOWL mark. The application was reviewed by the U.S. Trademark Office. The Trademark Office did not issue any refusals and did not find a likelihood of confusion with any prior registered marks. The application was published for third party opposition in the *Official Gazette* on April 16, 2019. No oppositions were filed against the application by any third parties, including Defendants. The application subsequently registered. A true and correct copy of U.S. Registration No. 5793807 is attached in **Exhibit B**.

19. Since adopting the DARKOWL Marks for use in commerce, DarkOwl has continuously used the DARKOWL Marks in commerce in connection with the promotion, marketing, advertising, sale, and provision of the DARKOWL Services throughout the United States.

20. DarkOwl has invested a substantial amount of time, money, and effort to promote and advertise the DARKOWL Services under the DARKOWL Marks.

21. The DARKOWL Services are highly specialized darknet cybersecurity and computer software services, rooted in dark web research and open source intelligence and designed to assist customers with not only protecting data from exposure on the dark web and darknet, but to also provide searching, monitoring, and investigation of the darknet for early detection of potential data breaches and assessment and mitigation solutions once a data breach is identified. Once data is compromised, DarkOwl provides customers with information and strategies to make swift, effective, and educated decisions for breach responses.

22. The DARKOWL Services are a niche area of the computer software and services industry.

23. DarkOwl targets highly sophisticated customers looking for its niche DARKOWL Services. Its target consumers consist primarily of businesses and individuals, threat intelligence teams, and data analysts searching for increased cybersecurity and assessments on cyber data risk and exposure levels. DarkOwl's customers exercise a significant degree of care when determining the proper data and cybersecurity software and services, darknet intelligence agency, and darknet content index services to purchase.

24. DarkOwl markets and provides the DARKOWL Services under the DARKOWL Marks extensively through its website, www.darkowl.com, through social media accounts such as Twitter and LinkedIn, and through other marketing and advertising materials. DarkOwl uses the "DarkOwl" handles on Twitter and LinkedIn and has nearly 3,000 followers on LinkedIn and nearly 1,500 followers on Twitter.

- 9 -

25. This promotion has been highly successful, and DarkOwl has become a world leader in cybersecurity and darknet intelligence with the world's largest darknet content index. DarkOwl has also received significant positive press from various media outlets, including, but not limited to, Forbes, Wired, Bloomberg, ZNet, CSO Online, SC Magazine, Government Technology, Channel Futures, GovHealthIT, mHealth Intelligence, BitDefender, and many others.

26. Over the last four (4) years, in large part due to DarkOwl's public efforts to market itself and its DARKOWL Services under the DARKOWL Marks, DarkOwl has become well known in its industry.

27. Since 2017, DarkOwl has built substantial goodwill in its DARKOWL Marks, and the DARKOWL Marks have become integral assets to its business.

28. The DARKOWL Marks are distinctive and identify the DARKOWL Services as originating with DarkOwl.

B.   **Arkowl, Its Business, and Its Marks**

29. Upon information and belief, Defendant Arkowl LLC was registered as a limited liability company with the Minnesota Secretary of State in 2012.

30. Upon information and belief, Arkowl began using the ARKOWL mark in 2012 in connection with email verification services.

31. Upon information and belief, Defendant Arkowl Corporation did not apply to federally register its claimed trademark rights until September 2019.

32. Arkowl relied on the common trademark law in the geographic territory where it operated to protect its alleged trademark rights from 2012 until September 2019.

33. Upon information and belief, Arkowl does not own nationwide common law rights in the ARKOWL mark dating back to 2012. Upon information and belief, Arkowl was not using the ARKOWL mark in all fifty states in connection with its services dating back to 2012.

34. Arkowl's common law trademark rights are limited in geographic scope to the locations it provided services under the ARKOWL mark. Arkowl's common law trademark rights are further limited in scope to those services provided under the ARKOWL mark dating back to 2012, namely, email verification services.

35. Upon information and belief, Arkowl targets and advertises and promotes its email, and more recently phone number, verification services towards e-commerce platforms.

36. Upon information and belief, Arkowl's customers are discerning and sophisticated.

37. Upon information and belief, Arkowl markets its email and phone number verification services through its website, www.arkowl.com, and its social media accounts.

38. DarkOwl's federal registrations and federally registered trademark rights in the DARKOWL Marks pre-date Arkowl's federal trademark applications for and purported nationwide common law rights in the ARKOWL and ARKOWL marks.

39. Upon information and belief, Defendant Arkowl Corporation owns the following U.S. registrations ("ARKOWL Registrations") in connection with the following services ("ARKOWL Services"):

| Mark | App./Reg. No./Date | Goods and Services | First Use Dates |
|---|---|---|---|
| ARKOWL | 88626162 Sep. 22, 2019<br><br>6036746 Apr. 21, 2020 | <u>Class 42:</u> Computer and Software services and Scientific Services being Software as a service (SAAS) services, namely, hosting software for use by others for use in verifying the credibility of data provided by e-commerce customers in an online order | First Use: Dec. 2, 2011<br><br>First Use in Commerce: Oct. 11, 2012 |
| ARK)WL (logo) | 88777943 Jan. 29, 2020<br><br>6285973 Mar. 9, 2021 | <u>Class 42:</u> Software as a service (SAAS) services, namely, hosting software for use by others for use in verifying the credibility of data provided by e-commerce customers in an online order. | First Use: Sep. 27, 2019<br><br>First Use in Commerce: Oct. 8, 2019 |

40. On September 22, 2019, Arkowl filed U.S. App. Serial No. 88626162 for ARKOWL. The application was reviewed by the U.S. Trademark Office, including a search for confusingly similar prior registered marks. The application was not refused registration based on a likelihood of confusion with any prior registered marks. The prior registered DARKOWL Marks were not cited against this application as a barrier to the application's registration due to a likelihood of confusion. The application was published for third party opposition in the *Official Gazette* on February 4, 2020. DarkOwl did not oppose the application.

41. On January 29, 2020, "1985" filed U.S. App. Serial No. 88777943 for ARK)WL. The application was reviewed by the U.S. Trademark Office, including a search for confusingly similar prior registered marks. The application was not refused registration based on a likelihood of confusion with the prior-registered DARKOWL Marks. The application was however refused registration based on a likelihood of confusion with Reg. No. 6036746 for

ARKOWL. Arkowl responded to the refusal by updating the owner information to Arkowl and noting that filing the application in the name of "1985" was accidental. The application was published for third party opposition in the *Official Gazette* on December 22, 2020. DarkOwl did not oppose the application.

C. The Parties' Marks and Defendants' Cease-and-Desist Demands

42. The DARKOWL Marks are different in sight, sound, meaning, and commercial impression from the ARKOWL and ARKOWL marks.

43. Upon information and belief, the DARKOWL Services do not directly compete with the ARKOWL Services.

44. Upon information and belief, DarkOwl targets separate and distinct consumers through different marketing channels from Arkowl.

45. DarkOwl is not aware of any instances of consumer confusion nor has it received any misdirected customer inquiries related to Arkowl or the ARKOWL and ARKOWL marks in the years of the parties' coexistence.

46. Upon information and belief, no harm has come to Arkowl from DarkOwl's coexisting use of the DARKOWL Marks in connection with the DARKOWL Services.

47. On or about April 2, 2021, Arkowl, through its counsel, sent a demand letter to DarkOwl. Arkowl accused DarkOwl of using "confusingly similar" marks and demanded DarkOwl "permanently cease all use of the DARKOWL Marks" and "[s]urrender its federal registrations in its DARKOWL Marks, including U.S. Reg. Nos. 5793807 and 5525738." Arkowl

asserted that it "is committed to the vigorous enforcement of its intellectual property rights." A true and correct copy of the letter dated April 2, 2021 DarkOwl received is attached as **Exhibit C**.

48. Arkowl's April 2, 2021 letter was the first instance of Arkowl attempting to enforce its purported common law and federal trademark rights against DarkOwl since DarkOwl first began using the DARKOWL Marks in 2017.

49. Prior to the April 2, 2021 letter, DarkOwl was unaware of Arkowl, its purported common law trademark rights, or its objection to the DARKOWL Marks or concern for any likelihood of confusion between the parties' respective trademarks or service offerings.

50. DarkOwl does not believe the parties' coexisting use of the respective DARKOWL Marks and ARKOWL and ARKOWL marks with the parties' respective services creates any likelihood of confusion for either party.

51. DarkOwl, through counsel, acknowledged Arkowl's demand letter on April 15, 2021.

52. The parties engaged in discussions in an effort to amicably resolve this matter, including telephone conferences between counsel and written communications.

53. However, on July 27, 2021, Arkowl, through counsel, renewed its demand that DarkOwl permanently cease use of the DARKOWL Marks and surrender its federal registrations.

V.    **REQUEST FOR DECLARATORY JUDGMENT**

**COUNT I**
**Declaration of Non-Infringement**

54. DarkOwl repeats and realleges the preceding paragraphs as if further set forth herein.

55. Upon information and belief, Arkowl does not own prior nationwide common rights in the ARKOWL or ARKOWL marks superior to DarkOwl's rights in the DARKOWL Marks.

56. DarkOwl has continuously, openly, and publicly used the DARKOWL Marks in commerce since at least as early as 2017 in connection with the DARKOWL Services.

57. DarkOwl has invested a substantial amount of time, money, and effort into building goodwill and consumer recognition in the DARKOWL Marks such that consumers have come to identify the DARKOWL Marks as designating the source of the DARKOWL Marks with DarkOwl.

58. The DARKOWL Marks are different and distinguishable from the ARKOWL and ARKOWL marks.

59. The DARKOWL Services are distinguishable from the ARKOWL Services.

60. DarkOwl targets distinct and separate consumers from Arkowl. Upon information and belief, DarkOwl's and Arkowl's consumers are discerning and sophisticated within their respective industries.

61. Upon information and belief, the parties utilize different marketing channels to provide their respective services to their target consumers.

62. DarkOwl is not aware of any instances of actual consumer confusion and is not aware of receiving any misdirected customer inquiries related to Arkowl, despite coexisting for a number of years.

63. When selecting the DARKOWL Marks, DarkOwl was not aware of Arkowl and did not intend to trade off any goodwill or infringe upon Arkowl's alleged trademark rights, such that there are any.

64. Upon information and belief, there is no likelihood of consumer confusion between the DARKOWL Marks or Arkowl's ARKOWL or ARK)WL marks.

65. Accordingly, DarkOwl is entitled to a Declaratory Judgment that its use of the DARKOWL Marks is not infringing Arkowl's purported trademark rights.

## COUNT II
### Declaration of Validity for U.S. Reg. Nos. 5525738 and 5793807 - DARKOWL Marks
### (28 U.S.C. § 2201 *et seq.*)

66. DarkOwl repeats and realleges the preceding paragraphs as if further set forth herein.

67. Since at least as early as August 2017, DarkOwl has used the DARKOWL CYBERSECURITY mark in connection with its registered services: Providing a database featuring information about internet security and computer security from the deep web and the darknet; computer security consultancy regarding data and information collected and obtained from the deep web and the darknet; software as a service (SaaS) services featuring software for retrieving from, adding to, and editing a database featuring information and data obtained from the deep web and the darknet; computer software consulting services in the field of cybersecurity utilizing deepweb and darknet information; electronic monitoring of information and data obtained from the deep web and the darknet for the purpose of internet and computer security by detecting compromised data; computer information security consulting services in the field of maintaining the security and

integrity of computer information and data using information and data obtained from the deep web and the darknet; providing computer and internet security analysis of information obtained from the deep web and the darknet; providing cybersecurity threat analysis for protecting data using information obtained from the deep web and the darknet; cybersecurity services, namely, monitoring of computer systems for data security purposes utilizing deep web and darknet information in Class 42.

68. Since at least as early as September 2018, DarkOwl has used and is currently using the DARKOWL mark in connection with its registered services: Providing a database featuring information about internet security and computer security from the deep web and the darknet; computer security consultancy regarding data and information collected and obtained from the deep web and the darknet; software as a service (SaaS) services featuring software for retrieving from, adding to, and editing a database featuring information and data obtained from the deep web and the darknet; computer software consulting services in the field of cybersecurity utilizing deepweb and darknet information; electronic monitoring of information and data obtained from the deep web and the darknet for the purpose of internet and computer security by detecting compromised data; computer information security consulting services in the field of maintaining the security and integrity of computer information and data using information and data obtained from the deep web and the darknet; providing computer and internet security analysis of information obtained from the deep web and the darknet; providing cybersecurity threat analysis for protecting data using information obtained from the deep web and the darknet; cybersecurity services, namely, monitoring of computer systems for data security purposes utilizing deep web and darknet information in Class 42.

69. Since 2017, DarkOwl has invested a substantial amount of time, money, and effort into building goodwill and consumer recognition in the DARKOWL CYBERSECURITY and DARKOWL marks such that consumers have come to identify the DARKOWL CYBERSECURITY and DARKOWL marks as designating the source of the DARKOWL Services with DarkOwl.

70. Upon information belief, there is no likelihood of confusion between DarkOwl's use of the DARKOWL CYBERSECURITY and DARKOWL marks and Arkowl's use of the ARKOWL and ARKOWL marks.

71. Upon information and belief, DarkOwl's use of the DARKOWL CYBERSECURITY and DARKOWL marks do not infringe Arkowl's alleged trademark rights.

72. Upon information and belief, DarkOwl is the exclusive user of the DARKOWL CYBERSECURITY and DARKOWL marks with its registered DARKOWL Services.

73. Accordingly, DarkOwl is entitled to a Declaratory Judgment that its DARKOWL Registrations are valid and subsisting under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A. That the Court enter judgment declaring that DarkOwl's use of the DARKOWL Marks in connection with the DARKOWL Services does not violate the Lanham Act or constitute trademark infringement or unfair competition under the Lanham Act or the common law of the State of Colorado;

B. That the Court enter judgment declaring U.S. Reg. No. 5525738 valid and not infringing;

C. That the Court enter judgment declaring U.S. Reg. No. 5793807 valid and not infringing;

D. That the Court enter judgment declaring Arkowl has not suffered any harm and is not entitled to a finding of infringement, damages, or any other such remedy or relief under 15 U.S.C. § 1117; and

E. That the Court grant DarkOwl such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

DarkOwl respectfully demands a trial by jury on all claims and issues so triable.

DATED this 9th day of August, 2021.

                        Respectfully submitted,

                        **PERKINS COIE LLP**

                        By: *s/ Lindsey Dunn*
                        Kourtney Mueller Merrill, CO Bar #36,662
                        Sabrina J. Danielson, CO Bar #49,279 1
                        Lindsey Dunn, CO Bar #50,438
                        900 Sixteenth Street, Suite 1400
                        Denver, CO  80202
                        P: (303) 291-2300
                        F: (303) 291-2400
                        KMerrill@perkinscoie.com
                        SDanielson@perkinscoie.com
                        LDunn@perkinscoie.com

                        ***Attorneys for Plaintiff DarkOwl, LLC***