## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

DARKOWL, LLC,

        Plaintiff,

v.

ARKOWL LLC and ARKOWL
CORPORATION,

        Defendants.

Court File No. 21-cv-02163

**ANSWER AND COUNTERCLAIMS**

Defendants, for their Answer to Plaintiff's Complaint, deny each and every allegation except as otherwise admitted below. In further response, Defendants state:

1.     Defendants admit the allegations in Paragraph 1 regarding the nature of the action, but deny that Plaintiff has the right to the relief requested.

2.     Defendants deny the allegations in Paragraph 2 that DarkOwl has earned substantial goodwill and consumer recognition in the DARKOWL Marks. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 2, and so deny them.

3.     Defendants admit the allegations in Paragraph 3 that it sent DarkOwl two demand letters alleging trademark rights in the ARKOWL marks and demanding DarkOwl cease all use of the DarkOwl Marks and

surrender DarkOwl's federal registrations. Defendants deny the remaining allegations in Paragraph 3.

4.     Defendants admit the allegations in Paragraph 4 regarding DarkOwl's request, but deny DarkOwl's entitlement to its request.

5.     Defendants admit the allegations in Paragraph 5.

6.     Defendants deny the allegations in Paragraph 6 and affirmatively state that there is no ArkOwl Corporation.

7.     Defendants deny the allegations in Paragraph 7 that ArkOwl LLC is affiliated with ArkOwl Corporation. Defendants admit the remaining allegations in Paragraph 7.

8.     Defendants admit the allegations in Paragraph 8 regarding the nature of the action, but deny that Plaintiff has the right to the relief requested.

9.     Defendants admit the allegations in Paragraph 9.

10.     Defendants admit the allegations in Paragraph 10.

11.     Defendants admit the allegations in Paragraph 11.

12.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 12, and so deny them.

13.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 13, and so deny them.

14.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 14, and so deny them.

15.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 15, and so deny them.

16.     Defendants deny the allegations in Paragraph 16 that DarkOwl owns any trademark rights. Defendants admit that DarkOwl owns the trademark registrations in Paragraph 16.

17.     Defendants admit the allegations in Paragraph 17.

18.     Defendants admit the allegations in Paragraph 18.

19.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 19, and so deny them.

20.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 20, and so deny them.

21.     Defendants deny the allegations in Paragraph 21 that DarkOwl's services are highly specialized. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 21, and so deny them.

22.     Defendants deny the allegations in Paragraph 22.

23.     Defendants admit the allegations in Paragraph 23 that DarkOwl targets businesses and individuals, threat intelligence teams, and data

analysts. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 23, and so deny them.

24.    Defendants admit the allegations in Paragraph 24.

25.    Defendants are without sufficient information to admit or deny the allegations in Paragraph 25, and so deny them.

26.    Defendants deny the allegations in Paragraph 26.

27.    Defendants deny the allegations in Paragraph 27.

28.    Defendants deny the allegations in Paragraph 28.

29.    Defendants admit the allegations in Paragraph 29.

30.    Defendants admit the allegations in Paragraph 30. Defendants further state that ArkOwl's use of the ARKOWL mark includes use in connection with providing data and fraud prevention solutions.

31.    Defendants admit the allegations in Paragraph 31.

32.    Defendants admit the allegations in Paragraph 32.

33.    Defendants deny the allegations in Paragraph 33.

34.    Paragraph 34 contains legal conclusions and no allegations of fact to which a response is required. Defendants deny any allegations of fact in Paragraph 34.

35.    Defendants deny the allegations in Paragraph 35.

36.    Defendants deny the allegations in Paragraph 36 that all its customers – including those making the decision to retain ArkOwl – are discerning and sophisticated.

37.    Defendants admit the allegations in Paragraph 37 that it uses its website and social media accounts to market it services. Defendants deny the characterization of its services and affirmatively state that it uses other channels of marketing in addition to those identified in Paragraph 37.

38.    Defendants deny that DarkOwl has any trademark rights that pre-date ArkOwl's trademark rights. Trademark registration does not confer trademark rights. Defendants admit that DarkOwl obtained federal registrations before ArkOwl acquired federal trademark registrations.

39.    Defendants admit the allegations in Paragraph 39. Defendants affirmatively allege that the registrations were erroneously made on behalf of ArkOwl Corporation instead of ArkOwl LLC, and that ArkOwl LLC owns the trademarks identified in the registrations.

40.    Defendants admit the allegations in Paragraph 40 and affirmatively allege that the search was not thorough. According to the U.S. Trademark Office report, the total search duration was 31 seconds.

41.    Defendants admit the allegations in Paragraph 41 and affirmatively allege that the search was not thorough. According to the U.S. Trademark Office report, the total search duration was 26 seconds.

42.     Defendants deny the allegations in Paragraph 42.

43.     Defendants deny the allegations in Paragraph 43.

44.     Defendants deny the allegations in Paragraph 44.

45.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 45 regarding whether Plaintiff received any misdirected customer inquiries, and so deny them. Defendants deny the remaining allegations in Paragraph 45.

46.     Defendants deny the allegations in Paragraph 46.

47.     Defendants admit the allegations in Paragraph 47.

48.     Defendants admit the allegations in Paragraph 48.

49.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 49, and so deny them.

50.     Defendants deny the allegations in Paragraph 50.

51.     Defendants admit the allegations in Paragraph 51

52.     Defendants admit the allegations in Paragraph 52.

53.     Defendants admit the allegations in Paragraph 53.

54.     Paragraph 54 contains no allegations of fact, and so no response is necessary.

55.     Defendants deny the allegations in Paragraph 55.

56.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 56, and so deny them.

57.     Defendants deny the allegations in Paragraph 57.

58.     Defendants deny the allegations in Paragraph 58.

59.     Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61.

62.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 62 regarding whether Plaintiff received any misdirected customer inquiries, and so deny them. Defendants deny the remaining allegations in Paragraph 62.

63.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 63, and so deny them.

64.     Defendants deny the allegations in Paragraph 64.

65.     Defendants deny the allegations in Paragraph 65.

66.     Paragraph 66 contains no allegations of fact, and so no response is required.

67.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 67, and so deny them.

68.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 68, and so deny them.

69.     Defendants deny the allegations in Paragraph 69.

70.     Defendants deny the allegations in Paragraph 70.

71.     Defendants deny the allegations in Paragraph 71.

72.     Defendants admit the allegations in Paragraph 72.

73.     Defendants deny the allegations in Paragraph 73.

## COUNTERCLAIM

Defendant ArkOwl LLC for its counterclaim against DarkOwl, LLC states and alleges as follows:

1.     This is an action that seeks a permanent injunction and an award of damages for Plaintiff's infringement of ArkOwl's trademark rights in the brand ArkOwl and associated logos.

2.     ArkOwl, LLC was formed in 2012 as a Minnesota limited liability company. The founders chose the name ArkOwl to speak to the predator-like hunt for online criminals.

3.     From its inception, ArkOwl has been in the fraud prevention space as a data provider. It is a software as a service ("SAAS") data provider and search service in the cybersecurity and fraud prevention industry. It specializes in providing data for email address verification and phone number verification.

4.     In 2016, ArkOwl's services expanded to include data from the dark web. The change broadened its services, but did not change its market, niche, or customer base.

5.     ArkOwl created a website at the domain www.arkowl.com on December 2, 2011, where it prominently displayed its ArkOwl mark and the following logo:



6.     ArkOwl has continuously and exclusively offered its services under the service mark ArkOwl since 2012. The service mark is highly distinctive and fanciful.

7.     ArkOwl obtained a federal registration for the word mark ArkOwl on April 21, 2020 (Reg. No. 6,036,746), claiming first use in commerce as early as October 11, 2012. ArkOwl mistakenly filed the trademark application on behalf of ArkOwl Corporation, which does not exist.

8.     ArkOwl adopted design marks utilizing its name and the image of an owl, including the following:



9.     ArkOwl has continuously and exclusively offered its services under the design marks identified above since its formation in 2012.

10.    In 2019, ArkOwl adopted an additional logo:



11.    ArkOwl obtained a federal registration for the design mark identified in Paragraph 10 on March 9, 2021 (Reg. No. 6,285,973). ArkOwl mistakenly filed the trademark application on behalf of ArkOwl Corporation, which does not exist.

12.    Just months after being formed, ArkOwl was invited to give a virtual demonstrative presentation of its service to the Merchant Risk Council affiliation group on June 14, 2012.

13.    The Merchant Risk Council is a nonprofit membership organization comprised of more than 500 companies, including more than 350 merchants focused on fraud prevention and risk management. It currently boasts members including Amazon, Apple, shop Disney, Google, Microsoft, and many other international companies.

14.    After the June 14, 2012 presentation, ArkOwl had become so well-known in its industry that, since 2012, every potential client it spoke with already knew its name and reputation.

15.    ArkOwl has enjoyed incredible international success. From its formation in 2012 through September 17, 2015 (when DarkOwl was formed),

ArkOwl acquired such customers as Apple, Best Buy, Alibaba, Hotwire, Sony, GameStop, Gucci, Louis Vuitton, and many more. By the time DarkOwl was formed, ArkOwl had customers with headquarters in 20 different countries.

16.     ArkOwl's customers access its tool through www.arkowl.com. As of September 17, 2015, its customers used ArkOwl's tool through its website from all 50 states, and across 25 countries. In Colorado alone, 3,162 unique users engaged in more than 40,000 sessions through ArkOwl's website before DarkOwl was formed.

17.     In 2019, ArkOwl's service expanded to include phone number data. To promote the new offering, it adopted the design mark identified in Paragraph 10.

18.     As it adopted the modified design mark, ArkOwl discovered DarkOwl's website. ArkOwl was concerned about the similarities between the ArkOwl mark and logo and DarkOwl's name and logo. However, DarkOwl's website marketed "darknet indexing" and "big data" offerings, leading ArkOwl to believe it was in a different industry than fraud prevention and cybersecurity. At that point, ArkOwl had not heard of DarkOwl.

19.     In 2021, an ArkOwl customer who is also in the fraud prevention solution industry contacted ArkOwl. The customer told ArkOwl it had received an email from a representative of DarkOwl and was confused as to whether DarkOwl was affiliated with ArkOwl.

20.    In response to the customer confusion, ArkOwl investigated DarkOwl more closely and discovered the company was in fact in the cybersecurity and fraud prevention industry. DarkOwl's website even promoted how to use its services for email address validation.

21.    ArkOwl and DarkOwl are direct competitors. Both provide online services as data providers, offering data enrichment in the fraud prevention space. Both sell access to breach data, and both include data regarding email validation. Both market to B2B customers, and specifically to the fraud prevention departments of those companies.

22.    Both companies market themselves as providing data enrichment services in the fraud industry.

23.    Both companies use the same advertising channels, including at conferences, on their respective websites, and through word-of-mouth.

24.    DarkOwl's name is nearly identical to ArkOwl's name, having only one letter added at the beginning. The names create the same general impression to customers.

25.    DarkOwl promotes its service through the domain http://darkowl.com which is a near copy of ArkOwl's domain, and completely contains ArkOwl's service mark.

26.    DarkOwl's logo is nearly identical to ArkOwl's design marks, including an emphasis on an "angry eye" of an owl.

27.     On information and belief, DarkOwl knew of ArkOwl, its mark and its logo when it adopted the DarkOwl mark and acquired its domain.

28.     On information and belief, DarkOwl knew of ArkOwl's design marks when it adopted its own logo.

29.     On information and belief, DarkOwl adopted its name, domain and logo to capitalize off the brand recognition and goodwill ArkOwl had created in the preceding years.

30.     Relevant consumers are likely to be confused as to the affiliation, sponsorship, or origin of DarkOwl because of the similarity in its name and logo to ArkOwl's name and logo.

31.     Customers have been confused as to the affiliation, sponsorship, or origin of DarkOwl because of the similarity in its name and logo to ArkOwl's name and logo.

32.     DarkOwl's use of a confusingly similar name and logo has already caused ArkOwl irreparable harm by damaging its goodwill and reputation, and by causing ArkOwl to lose control over its marks. ArkOwl will continue suffering irreparable harm unless DarkOwl is enjoined from such use.

33.     DarkOwl has profited off its use of a confusingly similar name and logo to the detriment of ArkOwl. It would be unjust to permit DarkOwl to retain the profits it has made using ArkOwl's intellectual property.

## COUNT I
## TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1125(A)

34.    ArkOwl owns the rights to the word mark ArkOwl through its continuous and exclusive use of the word mark in commerce since at least 2012.

35.    ArkOwl owns the rights to its design marks depicted below through its continuous and exclusive use of the design marks in commerce since at least 2012.



36.    ArkOwl's use of its word mark and design marks effectively penetrated the markets in every state and in 25 countries prior to DarkOwl's formation.

37.    DarkOwl uses the name DarkOwl and its design mark in a manner likely to cause confusion and had caused confusion as to the affiliation, sponsorship, or origin of the two companies.

38.    DarkOwl's use of the marks is willful and intended to confuse the public.

39.    DarkOwl's use of the marks has caused and will continue to cause ArkOwl irreparable harm. ArkOwl has also suffered damages as a result of DarkOwl's use of the marks.

## COUNT II
## CYBERSQUATTING
## 15 U.S.C. § 1125(D)

40.    DarkOwl registered, traffics in, and uses the domain http://www.darkowl.com.

41.    DarkOwl's domain name is confusingly similar to ArkOwl's distinctive mark ArkOwl.

42.    DarkOwl selected and registered the domain name with a bad faith intent to profit from ArkOwl's mark.

## COUNT III
## TRADEMARK CANCELLATION

43.    DarkOwl acquired a federal registration for the mark DarkOwl.

44.    DarkOwl acquired a federal registration for the design mark.

45.    DarkOwl's word mark and design mark resemble ArkOwl's word mark and design marks and are likely to cause confusion.

46.    ArkOwl acquired rights to the word mark ArkOwl and its design mark before DarkOwl began using the marks.

47.    To prevent further confusion, DarkOwl's registered word mark and design mark should be cancelled pursuant to 15 U.S.C. § 1119.

## COUNT IV
## COLORADO DECEPTIVE TRADE PRACTICES ACT
## COLO. REV. STAT. § 6-1-101 ET SEQ.

48.    ArkOwl is the owner of the service mark ARKOWL and certain design marks.

49.    ArkOwl adopted and used the service mark and design marks in every state prior to DarkOwl's formation and adoption of its name and design mark.

50.    DarkOwl uses a service mark and design marks that is confusingly similar to ArkOwl's marks.

51.    DarkOwl adopted its marks with the knowledge of ArkOwl's marks.

52.    DarkOwl adopted its marks and continue to use the marks with the intent to benefit from the goodwill ArkOwl created in its own marks.

53.    DarkOwl's use of the service mark and design mark in connection with the promotion of its services is likely to cause confusion as to the affiliation, connection, association, sponsorship, or approval of ArkOwl.

54.    DarkOwl's use of the service mark and design mark significantly impacts the public as actual or potential consumers of ArkOwl services.

55.    DarkOwl's use of the service mark and design mark has caused ArkOwl damages, including irreparable harm.

56.    DarkOwl's conduct was in bad faith and was willful and intentional.

WHEREFORE, Defendant ArkOwl requests the Court:

1.    Preliminarily and permanently enjoin Plaintiff from infringing ArkOwl's trademarks and design marks;

2.    Award ArkOwl all profits Plaintiff realized from its trademark infringement;

3.    Award ArkOwl its actual damages caused by Plaintiff's trademark infringement and cybserquatting;

4.    Alternatively, award ArkOwl statutory damages for cybsersquatting pursuant to 15 U.S.C. § 1117(d) of not less than $1,000 and not more than $100,000 per domain name;

5.    Cancel Plaintiff's federal trademark registrations pursuant to 15 U.S.C. § 1119;

6.    Award ArkOwl its costs, expenses, and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a) and Colo. Rev. Stat. § 6-1-113; and

7.    Grant such other and further relief as the Court deems just and equitable.

Dated: October 8, 2021                                 RUBRIC LEGAL LLC

                                                       */s/ Michael H. Frasier*

                                                       Michael H. Frasier (#387704)
                                                       111 Third Ave S, Ste 110
                                                       Minneapolis, MN 55401
                                                       612.465.0074
                                                       michael@rubriclegal.com


                                                       Attorney for Defendants