**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02163-KLM

DARKOWL, LLC,

    Plaintiff,

v.

ARKOWL, LLC and
ARKOWL CORPORATION,

    Defendants.

---

## [PROPOSED] SCHEDULING ORDER

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND *PRO SE* PARTIES

The Scheduling Conference in this matter is set for November 23, 2021, at 9:30 a.m.

Plaintiff DarkOwl, LLC ("Plaintiff" or "DarkOwl") is represented by:

> Kourtney Mueller Merrill
> Sabrina J. Danielson
> Perkins Coie, LLP
> 1900 Sixteenth Street, Suite 1400
> Denver, CO  80202-5255

Defendants Arkowl, LLC and Arkowl Corporation (collectively, "Defendants" or "Arkowl") are

represented by:

> Michael H. Frasier
> Rubric Legal LLC
> 111 Third Avenue South
> Suite 110
> Minneapolis, MN 55401

## 2. STATEMENT OF JURISDICTION

This is an action for a declaratory judgement of non-infringement and for a declaration of validity regarding DarkOwl's U.S. Trademark Registration Nos. 5525738 and 5793807, arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* and the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 and 15 U.S.C. § 1121. This Court also has subject matter jurisdiction over DarkOwl's claim requesting a Declaratory Judgment as to the validity of its United States trademark registrations pursuant to 15 U.S.C. § 1119.

Defendants have brought counterclaims against DarkOwl for alleged trademark infringement, cybersquatting, and cancellation of Plaintiffs' U.S. Trademark Registration Nos. 5525738 and 5793807. This Court has subject matter jurisdiction over the counterclaims pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Colorado Code § 6-1-101 *et seq.*

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. <u>Plaintiff:</u>

Formed in September 2015, DarkOwl is a Colorado cybersecurity company that focuses its product and service offerings on providing darknet intelligence services, cybersecurity consulting, searching, monitoring, and investigating the dark web, data and darknet analytics, computer software services for cybersecurity, and advisory mitigation services to customers when data has been compromised on the darknet. Over the last six years, DarkOwl has developed and now provides the world's largest index of darknet content with the tools necessary to efficiently search leaked and compromised data.

In 2017, DarkOwl began using the DARKOWL trademark throughout the United States to provide its highly specialized cybersecurity services. On March 24, 2017, DarkOwl applied to register its DARKOWL CYBERSECURITY mark with the U.S. Trademark Office and was granted federal registration of the mark on July 24, 2018 under U.S. Registration No. 5525738. On December 4, 2018, DarkOwl applied to register its DARKOWL mark with the U.S. Trademark Office and was granted federal registration of the mark on July 2, 2019 under U.S. Registration No. 5793807. Each mark was reviewed by the U.S. Trademark Office and no likelihood of confusion refusals were issued for either application. The applications were published for public opposition, and no third-party oppositions filed. Over the last four years, DarkOwl has invested a substantial amount of time, money, and effort to promote, advertise, and provide its niche darknet cybersecurity and computer software services to its highly sophisticated consumers under the DARKOWL trademark. As a result, DarkOwl has developed a substantial amount of consumer recognition and goodwill in its trademarks, and the trademarks have come to identify DarkOwl as the source of high quality and unique darknet cybersecurity offerings.

DarkOwl was unaware of Arkowl, Arkowl's business, or its alleged ARKOWL trademarks until April 2, 2021 when Arkowl sent DarkOwl a demand letter accusing DarkOwl of using confusingly similar trademarks and demanding DarkOwl surrender its federal trademark registrations and permanently cease use of its DARKOWL trademarks. DarkOwl and Arkowl are not direct competitors and offer different services through different marketing channels to different target consumers who are sophisticated in their respective industries. There is no likelihood of confusion between DarkOwl and Arkowl or their respective trademarks, and the parties can

continue to peacefully coexist has they have for the last four years. In light of the imminent threat of litigation, DarkOwl filed this lawsuit for a declaration of non-infringement and declaration of validity for its federal registrations.

  b. <u>Defendants</u>:

ArkOwl, LLC is a Minnesota limited liability company formed in 2012. Since its formation, ArkOwl has been a data provider in the fraud prevention space. It is a software as a service data provider and search service in the cybersecurity and fraud prevention industry. Its services expanded to include data from the dark web beginning in 2016.

ArkOwl is very well-known in the fraud prevention industry. From 2012 until 2015 – when DarkOwl was formed – ArkOwl had effectively penetrated the markets of all 50 states and 25 different countries.

ArkOwl has continuously operated under the name ArkOwl since 2012. When it formed, ArkOwl adopted the following logos:

In 2019, ArkOwl adopted an additional logo: 

On April 21, 2020, ArkOwl obtained a federal registration for the word mark ArkOwl (Reg. No. 6,036,746), claiming first use in commerce as early as October 11, 2012. On March 9, 2021, it obtained a registration for the design mark it adopted in 2019 (Reg. No. 6,285,973).

ArkOwl was unaware of DarkOwl's existence until recently. It discovered DarkOwl's website in 2019, but at the time did not believe DarkOwl operated in the same industry. In 2021, however, ArkOwl was contacted by one of its customers who is also in the fraud prevention

industry. The customer told ArkOwl it had received an email from DarkOwl and was confused as to the affiliation between DarkOwl and ArkOwl. At that point, ArkOwl did further investigation and discovered that DarkOwl is in the same industry providing competing services. It contacted DarkOwl in an effort to prevent confusion and resolve the dispute, but the parties were unable to reach an agreement.

  c. <u>Other Parties:</u>  None.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

  a. DarkOwl, LLC is a Colorado limited liability company with its principal place of business at 216 16th Street, Suite 700, Denver, Colorado 80202.

  b. Arkowl, LLC is a Minnesota limited liability company with its principal place of business at 6585 County Road 50, Carver, Minnesota 55315.

  c. On July 24, 2018, the United States Patent and Trademark Office granted U.S. Registration No. 5525738 on the Principal Register for the mark DARKOWL CYBERSECURITY.

  d. On July 2, 2019, the United States Patent and Trademark Office granted U.S. Registration No. 5793807 on the Principal Register for the mark DARKOWL.

  e. On April 21, 2020, the United States Patent and Trademark Office granted U.S. Registration No. 6036746 on the Principal Register for the mark ARKOWL.

  f. On March 9, 2021, the United States Patent and Trademark Office granted U.S. Registration No. 6285973 on the Principal Register for the mark ARKOWL.

## 5.   COMPUTATION OF DAMAGES

DarkOwl seeks a declaration of non-infringement, a declaration of validity of U.S. Reg. Nos. 5525738 and 5793807, judgment that Arkowl has not suffered any harm and is not entitled to a finding of infringement, damages, or any other such remedy or relief under 15 U.S.C. § 1117, and any other relief the Court deems appropriate.

ArkOwl seeks a permanent injunction barring DarkOwl from using the DarkOwl mark, the design mark, and any other marks confusingly similar to ArkOwl's marks. It seeks an order cancelling DarkOwl's trademark registrations. It also seeks monetary awards in the form of a disgorgement of DarkOwl's profits realized from its trademark infringement and actual damages caused by DarkOwl's trademark infringement and cybersquatting. The amount of damages or disgorgement of profits is currently unknown. ArkOwl alternatively seeks an award of statutory damages for cybersquatting.

## 6.   REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.   <u>Date of Rule 26(f) meetings.</u>

The parties conducted a Rule 26(f) conference via telephone on October 29, 2021.

b.   <u>Names of each participant and party he/she represented.</u>

DarkOwl was represented by Kourtney Merrill and Sabrina Danielson of Perkins Coie, LLP. Arkowl was represented by Michael Frasier of Rubric Legal LLC.

c.   <u>Statement as to when Rule 26(a)(1) disclosures were made or will be made.</u>

The parties will serve their respective Rule 26(a)(1) disclosures by **November 12, 2021**. The parties agree to produce the documents identified in their initial disclosures on a rolling basis beginning November 12, to be completed by December 3, 2021.

  d. <u>Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).</u>

None.

  e. <u>Statement concerning any agreements to conduct informal discovery.</u>

None.

  f. <u>Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.</u>

The parties have agreed to the following procedures:

  1. The parties agree that all privileged and work product communications or documents generated after the filing of this action do not need to be logged on a privilege log to the extent that such documents relate to this litigation.

  2. The parties agree to cooperate, when appropriate, in order to reduce the costs of litigation and to expedite the just disposition of this case.

  3. The parties agree to use electronic service of pleadings, discovery requests, and other documents on all counsel of record via email pursuant to Fed. R. Civ. P. 5(b)(2)(E). The parties further agree that service by email on all counsel of record shall be considered personal service on the date the email is sent and not subject to adjustment for calculating periods under Fed. R. Civ. P. 6(d).

  4. The parties agree to produce all documents existing in electronic format in single page, Group IV tagged image file format (TIFF) or searchable PDF format. Color files shall be produced in color. TIFF image files, PDF files, and other files shall be produced along with Concordance/Opticon load files linking the images or PDF files to the corresponding document that indicate the beginning, ending, attachments, OCRPath, NativeFile (if produced

natively), Confidentiality Claim (if any), and Md5Hash for each document. The producing party shall also produce the following categories of metadata with the load file, where applicable, and to the extent reasonably feasible: Custodian, Date, and To/From/CC/BCC (if an email). The parties are not obligated to produce metadata for any document that does not contain such metadata in the native version of the document at the time the document is collected.

> g. <u>Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.</u>

The parties do not anticipate that their claims and defenses will involve extensive electronically stored information, but some disclosure and discovery of information and records maintained in electronic form will be necessary. The parties also do not anticipate difficulties in accessing electronically stored information. To the extent the parties possess electronically stored information, both parties have previously initiated a litigation records hold.

The parties agree to cooperate regarding file type and production of electronically stored information. To the extent either party believes, on a case-by-case basis, that documents should be produced in a certain format (such as native files or tiff files), the parties will meet and confer in good faith concerning such production arrangements. The parties will also meet and confer in good faith to ensure that the format of each party's production is compatible with the technical requirements of the receiving party's document management system and the parties agree to conduct additional meet and confer conferences, as necessary, to attempt to reach further agreement on electronic document production.

The parties are generally not required to search, review, collect, or produce the following categories of electronic files, except when those files are relevant and attached or identified in a

text file, or specifically requested by a party (subject to any appropriate objections that may be lodged):

    1.    system or executable files (.exe, .dll, etc.);

    2.    audio, video, or audio-visual information, including telephonic recordings or voicemail (e.g., .wav, .mp3, .avi, .swf, etc.), unless the responsiveness of specific files is made known to counsel during search, review, collection, or production of other responsive information;

    3.    unreadable or corrupt files;

    4.    materials retained primarily for backup or disaster recovery purposes;

    5.    "embedded" materials (*e.g.*, Microsoft Office files embedded within Microsoft Office files such as Word and PowerPoint) not including email attachments, subject to the requesting party's right to request specific "embedded" material in specific produced documents; and

    6.    any other file types subsequently agreed in writing by the parties.

    h.    <u>Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.</u>

The parties, through counsel, engaged in informal settlement discussions prior to service of the Complaint. Those settlement discussions were unsuccessful. The parties remain open to resolving this matter via settlement. The parties are amenable to considering methods of alternate dispute resolution.

## 7. CONSENT

The deadline for the parties to file their respective consents to the exercise of jurisdiction of a magistrate judge is **November 16, 2021**. The parties shall file their respective consent/non-consent by this deadline.

## 8. DISCOVERY LIMITATIONS

a.  <u>Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.</u>

The parties do not request any modification of the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

b.  <u>Limitations which any party proposes on the length of depositions.</u>

The parties agree that they will work jointly in good faith to reach a resolution if a party seeks to extend the duration of a deposition beyond the 7 hours of record time set forth in Fed. R. Civ. P. 30(d)(1) or apportion depositions conducted pursuant to Fed. R. Civ. P. 30(b)(6) between different deponents and/or days.

c.  <u>Limitations which any party proposes on the number of requests for production and/or requests for admission.</u>

The parties do not request any limitations on the number of requests for production and/or requests for admission.

d.  <u>Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:</u>

The parties shall serve interrogatories, requests for productions and/or requests for admission at least 30 days before the fact discovery cut-off date.

e.  <u>Other Planning or Discovery Orders</u>

The parties agree to submit a proposed protective order to the Court by **November 19, 2021**.

### 9. CASE PLAN AND SCHEDULE

a. <u>Deadline for Joinder of Parties and Amendment of Pleadings</u>:  **December 31, 2021**

b. <u>Discovery Cut-off</u>:  **September 30, 2022**

c. <u>Deadline for Joint Settlement Status Report</u>: **October 14, 2022**

d. <u>Dispositive Motion Deadline</u>:  **January 31, 2023**

e. <u>Expert Witness Disclosures</u>:

1. The parties shall identify anticipated fields of expert testimony, if any. The parties preliminarily anticipate expert witness disclosures in the fields of damages and consumer confusion.

2. Limitations which the parties propose on the use or number of expert witnesses. The parties do not propose any limitations on the use of experts.

3. The parties shall designate all experts and provide opposing counsel and any *pro se* parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **December 2, 2022**.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **January 10, 2023**.

e. <u>Identification of Persons to Be Deposed</u>:  The parties have not yet exchanged initial disclosures, conducted discovery, or completed their respective investigations or analyses relating

to this action. Based on the information currently available, the parties preliminarily identify the following person to be deposed:

- Unknown Arkowl officers and employees (7 hours for each witness)
- Unknown testifying expert witnesses (TBD)
- Unknown DarkOwl officers and employees (7 hours for each witness)
- Unknown testifying expert witnesses (TBD)

### 10.   DATES FOR FURTHER CONFERENCES

a.   Status conferences will be held in this case at the following dates and times:

_____.

b.   A final pretrial conference will be held in this case on _____ at o'clock _____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

### 11.   OTHER SCHEDULING MATTERS

a.   <u>Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.</u>

None at this time.

b.   <u>Anticipated length of trial and whether trial is to the court or jury.</u>

The parties anticipate that a trial in this matter will last 5 days and have requested that the trial is to a jury.

c.   <u>Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439.</u>

None.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.


DATED at Denver, Colorado, this __ day of _____, 20__.


BY THE COURT:

_____
United States Magistrate Judge

Respectfully submitted,

| **Perkins Coie LLP** | **Rubric Legal LLC** |
|---|---|
| By: s/ *Sabrina J. Danielson* | By: s/ *Michael H. Frasier* |
| Kourtney Mueller Merrill, Bar No. 36662 | Michael H. Frasier |
| Sabrina J. Danielson, Bar No. 49279 | 111 Third Ave. S, Ste 110 |
| 1900 Sixteenth Street, Suite 1400 | Minneapolis, MN  55401 |
| Denver, Colorado 80202-5255 | Telephone: 612.465.0074 |
| Telephone: 303.291.2300 | michael@rubriclegal.com |
| Facsimile: 303.291.2400 | |
| KMerrill@perkinscoie.com | *Attorney for Defendants* |
| SDanielson@perkinscoie.com | |
| | |
| *Attorneys for Plaintiff DarkOwl, LLC* | |